Dear Inspector General Robinson:
You have requested an opinion of this Office regarding our interpretation of several laws and rules that govern the payment of a salary to the President of the Orleans Levee District. Specifically, you ask the following questions:
 (1) Must the President of the Board of Levee Commissioners ("the Board") of the Orleans Levee District seek and obtain approval from the Board before he sets his own salary and issues a warrant to take his salary in lieu of per diem or can the President simply set the amount of his salary and issue a warrant for that salary without prior approval from the Board?
 (2) Under La. R.S. 38:308(B), must the Board seek review from the Commissioner of Administration and the Joint Legislative Committee on the Budget ("JLCB") of a salary that it intends to pay?
 (3) Does the "review" contemplated in La. R.S. 38:308(B) refer only to notifying the Commissioner of Administration and the JLCB or are those entities given the power to deny or modify the salary request?
 (4) Can the President's election to receive a salary in lieu of per diem, if valid, be applied retroactively to the first date of his presidency by using a warrant?
Each of these questions is addressed in order below. In addition to your request, you attached, for our review, a letter from the President of the Orleans Levee District in which he elects to draw a salary in lieu of per diem and a copy of the Bylaws of the Board of Levee Commissioners ("the Board") of the Orleans Levee District. In this instance, we also have the benefit of access to documents created by consulting attorneys to the Board. These attorneys have rendered their opinions on the matter of the legality of the salary, both prospectively and retroactively. From the above-referenced materials and from your request letter, we glean the facts surrounding this request that we recount below.
Nine years ago, Governor Murphy J. "Mike" Foster appointed the current President of the Orleans Levee District. At the beginning of his tenure, the President was informed by someone affiliated with the Orleans Levee District ("the District") that he could not draw a salary for his position. The reason given for why he could not draw a salary was that the District already had an executive director performing the District's administrative duties and that, under La. R.S. 38:308, because the District already had an administrator, the President could not serve that function and thus was only entitled to the per diem reimbursement allowed to other Board members of the District under La. R.S.38:308. The President accepted the position anyway and has served in his capacity as President since June 19, 1996.
On July 8, 2005, the President issued a warrant to the Orleans Levee District Secretary to draw the salary that he was told he could not receive in 1996.[1] His warrant requested the maximum salary allowable, retroactively to June 19, 1996, less the amount paid to him in per diem, and prospectively for the remainder of his tenure. Without taking this matter before the Board of the Orleans Levee District and without ever being classified as an administrator of the District under La. R.S.38:308, the President had the Finance Department of the District issue him a check for an unspecified amount of retroactive pay.[2] It is within the confines of these facts that we answer each of your questions below.
Can the President Unilaterally Grant Himself a Salary?
As to your first question, regarding whether the President can unilaterally grant himself a salary, it is our opinion that the answer to this is in the negative. As an initial matter, it is axiomatic that the conduct of good government must be accomplished in an open, public, and democratic manner. See, Ryan M. Seidemann, Louisiana's Open Meetings Law: Implications for Policymaking, 82 Louisiana Coastal Law 1 (2003). There is no doubt that the unilateral granting of a salary to oneself by a governmental official without resort to the typical open and democratic process violates this axiom. That being said, there is no question that the President can, as he did in this instance, unilaterally issue a warrant. However, compliance with the statutory scheme and the Board's bylaws and customary practice do not allow such a warrant to lead directly to an unreviewed, unilateral granting of a salary. It is clear from our review of the circumstances and the law, that such compliance is lacking in this situation.
Although neither the statutes related to levee boards, La. R.S.38:304 et seq., nor the Bylaws of the New Orleans Parish Levee District squarely address the procedure for granting a salary to the President, there is tacit evidence in the Revised Statutes that suggests that such salary increases must be approved by the Board. See also La. Atty. Gen. Op. No. 00-68 (noting that Board activity was required for the provision of salary increases to Department of Public Works employees. If Board activity was required for mere salary increases in this situation, then afortiori, such action should be required for the granting of a salary in the present situation.) Louisiana Revised Statute38:308(A) requires that the Board vote on the amount of per diem that will be paid to its members. That statute also states that the President may draw a salary, not to "exceed the sum of one thousand dollars per month." Id. Because the statute notes that the salary could be set at a lower rate than the maximum one thousand dollars it appears to envision some means of determining what amount is reasonable to pay the President. It is only logical that this ambiguity as to the amount of compensation to be paid to the President was intended to be decided by the Board as a whole. This is supported by the per diem requirements in the same statutory provision, whereby the Board is required to vote on the compensation of its members. There is simply no logical reason that such a voting requirement should not apply to the President's salary as well.
In addition to the tacit requirement that the Board must vote on the President's salary in the Revised Statutes, there is also tacit evidence to this effect in the Bylaws of the Board of Levee Commissioners of the Orleans Levee District ("the Bylaws"). Under Article III of the Bylaws, there are numerous provisions that provide the Board with control over the finances of the District. Although none of these provisions directly address the compensation of any Board members, the authority of the Board to control the finances of the District can only be logically interpreted to mean that such compensation falls under the power of the Board to approve or disapprove. Thus, it is our opinion that, because the salary increase for the President was not submitted to the Board for a vote, it is an invalid exercise of power under both the Revised Statutes and the Bylaws. In other words, to have been valid, the Board must first have voted on this matter.
The law on the control of the finances by the Board is also upset by the actions of the President unilaterally paying himself a salary. Under La. R.S. 38:306(D), the Board is charged with keeping "an accurate account of the finances of the levee district." Additionally, "[t]he account shall show in detail the expenditures made by the authority of the board." Id.
Included in the list of expenditures that must be authorized under La. R.S. 38:306(D) is "salaries paid." It is no quantum leap of reasoning to infer that the list of expenditures in La. R.S. 38:308(D) qualify as actions requiring the authority of the Board. Such an interpretation can only lead to the conclusion that "authority of the board" means approval of the Board. Certainly it cannot be said that such expenditures could be unilaterally granted when the clear language of the statute, which includes salaries, requires the "authority" of the Board. Thus it is our opinion that, under La. R.S. 38:306(D), approval of the Board must be sought for salary-related expenditures. Indeed, the President's unilateral granting of a salary to himself undermines the entire statutory scheme.
Louisiana Revised Statute 38:308(A) states, in pertinent part, that, "[i]n lieu of the per diem provision which is herein made, a president of any levee board . . . may receive a salary if he also acts as administrator for said board." Thus, according to La. R.S. 38:308(A), one restriction against the President drawing a salary rather than merely per diem is a matter of classification: Is the President also the administrator for the Board? If the President is classified as the Board administrator, then he can elect to draw a salary. Because La. R.S. 38:308(A) makes a distinction that the President must also be the Board administrator to receive the salary, it is clear that there is no automatic unity of classification. In other words, the language of La. R.S. 38:308(A) makes it clear that merely being the President does not also make the President the administrator. It should also be noted that the payment of a salary is not compulsory once a determination is made that the President is also the administrator. This conclusion is evident by the use of the term "may" rather than "shall" in the phrase ". . . may receive a salary . . ." Id. (emphasis added). See also La. Atty. Gen. Op. Nos. 80-1095 and 05-0060 (supporting the proposition that such permissive statutory language is not tantamount to an obligation).
According to the documentation that has been provided to this Office,[3] the President is not currently classified as the administrator. However, La. R.S. 38:308 does not restrict a change in his classification. From a plain reading of the statute, there is no restriction as to when such a change in classification must or can be made. The reasonable inference from this silence is that the classification of the President as administrator can be made by the Board. The President can then elect to draw a salary. All of this must be accomplished with Board approval. Thus, it is our opinion that the President, upon a finding by the Board that he is the administrator, can issue a request to the Board that he wants to receive a salary in lieu of the per diem at any time he so chooses. The matter must then be considered by the Board.
A review of the Bylaws also does not lead necessarily to the conclusion that the President is also the Board administrator. Article V of the Bylaws lists the powers and duties of the President, which include several items. Taken together, these items could lead to a conclusion that the President may also function as administrator, but this could perhaps be said of any of the officers of the Board when viewing their duties from a treetop perspective. The most significant duty of the President to this inquiry, of which a similar duty is shared by all officers, is that he has "all other executive powers as may be designated by virtue of the office and as required by the Board." Bylaws at 4. This Office notes that the President, in the warrant submitted as Exhibit 1 to this request, complains of the volume of work that he has performed in his official capacity. We do not dispute this assertion. Indeed, we are sure that performing as the President of the Orleans Levee District, a century-old political subdivision charged with, among other things, managing the New Orleans Lakefront Airport and 129 miles of levees around the City of New Orleans,[4] can, at times, be daunting. However, the daunting nature of the job is not at issue here. Because the duties described by the President in the warrant[5] and the remainder of the duties in Article V of the Bylaws[6] appear to be ministerial in nature, a reasonable conclusion is that the President is not the de facto
administrator and that a factual inquiry is required to determine whether or not the President should also be classified as the Board administrator at all. This conclusion is bolstered by the duties of the Executive Director for the Board who appears to serve the functions of the Board administrator. In this respect, the Bylaws state that the duties of the Executive Director include "responsibility . . . to execute the policies and projects of the Board as a prudent administrator." Bylaws, Art. IV at 4 (emphasis added).
Although, at present, this Office is aware of no evidence showing that the President is also the Board administrator, this would not preclude a later factual finding that the President does act as the Board administrator. However, as we have stated in numerous previous opinions, this Office is not a finder of fact and we decline to pass final judgment on the factual determination whether of or not the President's should be classified as the Board administrator. See e.g., La. Atty. Gen. Op. Nos. 05-0083 and 04-0157. Despite any factual finding as to the President's classification as administrator or not, this finding does not, in light of the analysis below, avoid the reality that proper procedure has not been followed with respect to the approval of a salary grant. Thus, even if the President is ultimately determined to have been or to be the Board administrator, proper procedures for approving his salary were not followed. Additionally, under the analysis below, the President is not entitled to a retroactive salary even if it is found that he may receive it prospectively through a classification as the Board administrator.
Must the Board Seek Review of Salaries?
Your second question brings into question the invalidity of the President's unilateral salary increase. In that question, you ask how La. R.S. 38:308(B)'s requirement that "[a]ny salary paid must be submitted for review to the commissioner of administration and the Joint Legislative Committee on the Budget" applies to a salary granted to the President under La. R.S. 38:308(A). The language of La. R.S. 38:308(B) is clear and unambiguous. Accordingly, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the legislature." La. C.C. Art. 9. Thus, strictly applying this law, there is no way for a salary of a levee board employee or committee member to escape the review of the Commissioner of Administration or the JLCB. Because of the clear and unambiguous language of this statutory provision, it is our opinion that no salary can be drawn until such a review has occurred. Research shows that the Commissioner of Administration never received a request for a review of the President's salary. Additionally, in the materials that we have received in connection with this request, we note that one of the Board's contract attorneys made it clear, in a letter addressed to the Secretary and copied to the President, that at least some amount of review of the salary must be accomplished by the Commissioner of Administration and the JLCB.[7] However, as we have stated, no such review has occurred. Therefore, we must conclude that the President, in the unilateral granting of his own salary, failed to comply with the statutory requirements for review of that salary as required by La. R.S. 38:308(B). Thus, it is our opinion that this oversight, alone, is enough to render the salary grant invalid. Thus the salary was improperly granted.
What is Meant by "Review" in La. R.S. 38:308(B)?
As a corollary to the above question, you also ask what the meaning of "review" is as it is used in La. R.S. 38:308(B). This is an important question, as in an opinion rendered by a consulting attorney to the Secretary of the Board, it was noted that "review" was akin only to "notice."[8] The implication of this fact is that "review" certainly could not rise to the level of "approval" or "denial" of the President's salary. According to this letter, by merely notifying the Commissioner of Administration and the JLCB, La. R.S. 38:308(B) has been complied with and the President can thus grant himself a salary.
Such an interpretation of La. R.S. 38:308(B) appears to fly in the face of the existence of such a provision. If notice was all that was necessary, then "notice" would have been the term placed in the statute by the Legislature. However, it was not; "review" was used. The use of the term "review" contemplates that something more than merely notifying the Commissioner of Adminstration and the JLCB was envisioned by the Legislature.
The typical mode of statutory analysis is to take the most common-sense and typically-used definition of a word as the meaning that the Legislature intended when it created a law. La. C.C. Art. 11. In this instance, Black's Law Dictionary defines the term, "review," in pertinent part, as, "[t]o re-examine judicially or administratively. A reconsideration; second view or examination; revision; consideration for the purposes of correction." Joseph R. Nolan Jacqueline M. Nolan-Haley,Black's Law Dictionary, 6th ed., 1320 (West 1990). Although the review contemplated by La. R.S. 38:308(B) may not, as the consulting attorney for the Board has suggested, connote that the Commissioner of Administration or the JLCB have the power to reject the proposed salary submitted to them, it does suggest that something more than mere notice is required. Thus, it is our opinion that La. R.S. 38:308(B) contemplates, at a minimum, a hard look at proposed salaries of levee board officials by the Commissioner of Administration and the JLCB prior to the final approval of the salaries by the Board. Because there is no law to guide us in divining what the extent of this review should be, we leave it to the courts to decide if the review contemplated by La. R.S. 38:308(B) also encompasses approval or disapproval of the salary or whether it is just a review, with comments provided to the board to assist it in making its decision regarding the granting of the salary. Regardless, even the minimalist interpretation of the meaning of "review" likely includes suggestions for changes or revisions to the proposed salary by the reviewers that must be, at a minimum, considered by the Board prior to approving the salary and perhaps even adopted by the Board prior to such approval. Therefore, it is further our opinion that, since there is no evidence that such a review ever occurred in the case of the Orleans Parish Levee District President's salary, that the granting of this salary was in violation of the law under La. R.S. 38:308(B).
Can the President Receive a Retroactive Salary?
As to your fourth question, regarding whether the President can retroactively draw a salary, it is our opinion that the answer to this is in the negative. Though you ask if an election to receive a salary retroactively can be accomplished "simply by issuing a warrant," the warrant has nothing to do with this retroactive issuance of a salary. Admittedly, there have been a few instances in which retroactive salaries were found to be valid for governmental employees in Louisiana. See e.g., La. Atty. Gen. Op. No. 95-341; 95-440; 00-68. However, the factual scenarios in those cases substantially differ from the situation that you pose in your request. Therefore, it is our opinion that this situation does not meet the necessary criteria for such retroactive pay. The brief answer to this question is that retroactive pay is a violation of the prohibition against donations by the State under La. Const. Art. VII, Sec. 14.
In spite of the fact the levee board President referred to in this request may have been erroneously advised regarding whether he could receive a salary or a per diem, he took the position. He was not promised a salary pending funding becoming available, nor was any other representation made to him to entice him to take the position that would have created a preexisting obligation on the part of the levee board to retroactively pay the President upon a determination by the Board that he is also the administrator. In the absence of a preexisting obligation to pay a salary increase retroactively, this Office has consistently opined that such an action, even for services rendered in the past, would constitute a donation in violation of La. Const. Art.VII, Sec. 14. In light of this reality, La. Atty. Gen. Op. No. 05-0223 is informative. That opinion states, in pertinent part, that:
 Article VII, Section 14(a) of the Louisiana Constitution of 1974 states the following concerning the donation, loan or pledge of public credit:
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
 This section of the constitution is applicable to situations in which the state or a political subdivision has no obligation to make a payment of public funds. As stated by the Louisiana Supreme Court in City of Port Allen v. Louisiana Municipal Risk Management Agency, Inc., et. al, Article VII Section 14 is violated when the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. 439 So.2d 399
(La. 1983). The Louisiana Civil Code defines an obligation as a legal relationship whereby an obligor is bound to render performance which may consist of giving, doing or not doing something. La. Civil Code Art. 1756. Obligations can arise from contracts and other declarations of will. La. Civil Code Art. 1757.
 This office has consistently opined that the payment of a bonus, or any other gratuitous, unearned payment to public employees is prohibited, as same would be tantamount to a donation. La. Atty Gen. Op Nos. 79-1352, 80-806, 80-1095, 81-1044, 85-908, 86-88, 86-639, 88-344, 89-190 and 91-383. Within the listed opinions, we have found that retroactive pay increases for services previously rendered is a violation of Article VII Section 14. Any salary adjustment should have prospective application only. See also, McElveen v. Callahan, 309 So.2d 379
(La.App. 3d Cir. 1975), writ denied, 313 So.2d 602
(La. 1975), wherein the court stated "[p]ayments to be legal must be in the form of salary increases for the future, not extra compensation for past services rendered."
(footnotes omitted). Although the matter at issue in La. Atty. Gen. Op. No. 05-0223 is one of pay increases, it is our opinion that this same principle applies to the granting of a retroactive salary to the President. As was demonstrated above, the Orleans Levee District is not obligated to pay a salary to the President. Thus, under the Revised Statutes, the case law and past opinions of this Office, paying such a retroactive salary would constitute a violation of La. Const. Art. VII, Sec. 14.
One argument has been made on this matter stating that the Legislature's enacting La. R.S. 38:308 creates a preexisting obligation sufficient to avoid the prohibition of donations under La. Const. Art. VII, Sec. 14. However, there is no language in the statute to support such an interpretation. Indeed, the elective nature of the salary in the first place (i.e., "may
receive") seems to militate against an interpretation that such an obligation is created. Thus, it is our opinion that La. R.S.38:308 does not, by itself, create an obligation that might support a necessary preexisting obligation to pay a retroactive salary.
In an effort to fully analyze this issue, we have conducted a comprehensive search of opinions of this Office and the relevant case law. The opinions of this Office, cited in the quote from Opinion 05-0223 above, are consistent in their holding that retroactive salary increases are donations that constitute a violation of La. Const. Art. VII, Sec. 14. For example, in La. Atty. Gen. Op. No. 80-806, the question being addressed was one of a retroactive salary adjustment for departmental directors who had received less than an average salary for a period of time. The opinion states that "[s]uch a reimbursement would, in effect, be a lump sum payment for services previously compensated." The author of the opinion goes on to state that such retroactive adjustments are considered donations that would violate La. Const. Art. VII, Sec. 14 if awarded. Although the granting of a retroactive salary to the President of the Orleans Levee District is distinguishable from an increase in pay for salaries that already exist (as is the case in all of the opinions cited above), the salary appears to fall under the classification of "a lump sum payment for services previously compensated" noted above. The reason for this is that the President did receive per diem as compensation the duration of his nine-year tenure in that position. Even if this did not amount to as much as the one thousand dollars per month salary that could have been drawn, it was compensation for his services. Thus, it is our opinion that La. Atty. Gen. Op. No. 80-806 supports the fact that such a retroactive grant of a salary as the one to the Orleans Levee District President is unconstitutional. As importantly noted in that opinion, and repeated in virtually every relevant opinion to date, "salary adjustments should relate only to future services." See also, La. Atty. Gen. Op. Nos. 80-1095; 89-190; 92-866; 95-145; 95-440. Another important point to note from the opinions of this Office is the comment in La. Atty. Gen. Op. No. 95-440 that, "[v]arious methods attempting to disguise constitutionally prohibited extra compensation for past services rendered and recompensed in the authorities cited above were found to be equally invalid." What this comment points out is that even if a clever theory to attempt to provide a retroactive salary to the President of the Orleans Levee District were to be devised, it likely would still have substantial difficulty passing muster under Article VII, Section 14 of the Louisiana Constitution. See also La. Atty. Gen. Op. No. 95-145.
A few opinions of this Office do present interesting insights on the distinctions of what constitutes retroactive salaries and what does not. In La. Atty. Op. No. 91-383, this Office opined that, while the granting of retroactive salaries would be considered a gratuity and thus prohibited under the Louisiana Constitution, retroactive compensation for expenses would not be so classified. However, in light of the statement from La. Atty. Gen. Op. No. 95-440, quoted in the previous paragraph, it is our opinion that an argument that the past salary that the President of the Orleans Levee District did not receive could not be classified as compensation for expenses. The compensation for expenses in this situation would, no doubt, be the per diem that he did draw and, making an argument that he is due something more under a compensation for expenses argument, akin to the one thousand dollars per month salary, is sure to be rejected by any court.
Another opinion of particular interest is La. Atty. Gen. Op. No. 95-341, commenting that, in a particular circumstance, under the ruling in an unreported case, back pay could avoid being classed as a donation but rather would be a nonprohibited reimbursement for past due salaries. No explanation of how the difference in terminology between "donation," "back pay," and "reimbursement for past due salaries" is undertaken in that opinion, making a comparison of the circumstances to the matter under consideration difficult. Nevertheless, because this opinion stated that the salaries were "past due," the situation on which that opinion was rendered is distinguishable from the present matter. Due to the lack of an obligation to pay a salary to the President in the present scenario, the salary that he is attempting to claim cannot be said to be "past due" as it was never actually due at all. This is exacerbated by the reality that the President drew a per diem in lieu of a salary, even if that per diem was drawn in light of erroneous advice.
Although not directly addressing the matter at hand, La. Atty. Gen. Op. No. 01-221 is somewhat informative as to whether or not retroactive pay for salary is due if the reason that the salary was not paid in the first place was a mistake of the governmental entity. This opinion, citing La. Atty. Gen. Op. No. 00-188 as further support, states that there is no legal obligation to pay a back salary even when someone was wrongly or erroneously not paid that salary in the first place. Because the numerous other opinions of this office note, based on City of Port Allen v.Louisiana Municipal Risk Management Agency, Inc., et. al, that a legal obligation to pay is required to avoid the constitutional prohibition against donations, we find it necessary to conclude that the alleged error of the levee board in this instance is not sufficient to support a reason to provide retroactive pay to the President, nor does the alleged error create an obligation to do so. Additionally, regardless of any alleged error in this matter, the only obligation that was created was for the payment of per diem and not for a salary, thus even a finding of error should not affect the outcome of this matter. The only obligation, the one for per diem, was performed upon, error or no error — to grant anything more would be a constitutional violation.
In the absence of any real support for granting retroactive pay in the case law, the Revised Statutes, or the opinions of this Office, we examine the question of retroactive pay under conventional obligations law. While Civil Code Article 1757
states that obligations can derive from contracts and other declarations of will, there is no evidence of a contract or declaration of will in the present situation. There is similar silence as to how a theory of enrichment without cause under La. C.C. Art. 2298 et seq. might be employed in this instance. Under such a theory, it would have to be shown that the levee board benefited from the work of the President above and beyond the amount that was paid to him in per diem to compensate him for his time and expenses. There is no case law on this issue directly and there is similarly no persuasive or informative case law on holding the State liable for unjust enrichment. However, this argument similarly runs into the problem that there was no obligation to begin with. Additionally, under an unjust enrichment argument, the acceptance of the per diem and the terms of the position of President with the knowledge that no salary would be paid seems to both create a natural obligation on behalf of the President for which he cannot claim recompense and to simultaneously defeat an argument for unjust enrichment because he assented to the terms of the employment in the first place.
All of the foregoing considered, it is our opinion that a retroactive salary, including the one for the Orleans Levee District President, falls under the category of prohibited donations in La. Const. Art. VII, Sec. 14. The retroactive granting of a salary in this instance does not meet the requirements espoused by the Louisiana Supreme Court in City ofPort Allen, supra, requiring a preexisting obligation to support a donation of State property. In light of the above analysis, it is our opinion that the President can elect to receive a salary now (if he is determined to be the administrator of the board), but that he cannot receive the salary retroactively.
Opinion Summary
To summarize this lengthy opinion, we offer the following recapitulations of our conclusions:
 (1) Although the President of the Board of Levee Commissioners of the Orleans Levee District can issue a warrant for his salary, he must seek and obtain approval from the Board before he sets his own salary and takes the salary in lieu of per diem. This action cannot be accomplished unilaterally.
 (2) The Board must seek review from the Commissioner of Administration and the Joint Legislative Committee on the Budget, pursuant to La. R.S. 38:308(B), before actually paying a salary.
 (3) The "review" contemplated by La. R.S. 38:308(B) is something more than merely notifying the Commissioner of Administration and the Joint Legislative Committee on the Budget. Rather, this review contemplates some measure of comment and approval by these bodies.
 (4) The President cannot receive a salary retroactively absent a preexisting obligation to grant said salary.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
Sincerely yours,
CHARLES C. FOTI, JR.ATTORNEY GENERAL
By: ___________________RYAN M. SEIDEMANNAssistant Attorney General
[1] Letter from President James P. Huey to Secretary Max Hearn, July 8, 2005, submitted as Exhibit 1 to this opinion request.
[2] Letter from Mr. Gary G. Benoit, Esq., Senior Counsel, Orleans Levee District to Governor Kathleen B. Blanco, September 23, 2005.
[3] See notes 1 and 2, supra.
[4] Joan B. Garvey and Mary Lou Widmer, Beautiful Crescent: AHistory of New Orleans, 178 (Garmer Press, Inc., 1994).
[5] ". . . discussing policy matters, signing contracts, and holding meetings dealing with levee district operations." Supra, note 1.
[6] Summarized, these duties are: (1) to preside at Board meetings and serve as ex-officio member of all committees; (2) to see that the laws of the State related to the Board are faithfully observed and executed; (3) to call special and emergency meetings; (4) to act for the Board in emergencies on matters that the President has been granted a right to act by the Board; (5) to delegate certain authority to employees of the Board.
[7] Letter from Gerard G. Metzger, Esq. to Secretary Max Hearn, July 18, 2005.
[8] Letter from George L. Carmouche, Esq. to Secretary Max Hearn, June 23, 2005. Mr. Carmouche notes that "Part B of the statute does not require approval of the commissioner of administration and the Joint Committee on the Budget [sic], but simply requires that the choice of taking a salary shall be submitted for review." Id. at 2. The letter goes on to imply that the "review" is merely mailing a letter to the necessary parties and that no delay for a response is required.